UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 09-72532

TAJ GRAPHICS ENTERPRISES, LLC,                  Chapter 11

          Debtor.                               Judge Thomas J. Tucker

_____/

**OPINION REGARDING THE DEBTOR'S MOTION TO DISMISS THIS CASE,
AND THE MOTIONS BY PRIME FINANCIAL, INC. TO
CONVERT THIS CASE TO CHAPTER 7**

## I.  Introduction

This case came before the Court for a hearing on May 8, 2019, on several motions,

including the following four motions (collectively, the "Motions"): (1) the motion filed by the

Debtor, entitled "Debtor's Second Motion to Dismiss" (Docket # 155); (2) the motion filed by

Prime Financial, Inc. ("Prime"), entitled "Second Creditor Motion to Convert Case to Chapter 7"

(Docket # 179); (3) the motion filed by Prime, entitled "Emergency Motion to Convert Case to

Chapter 7 for Cause" (Docket # 993); and (4) the motion filed by Prime, entitled "Renewed

Emergency Motion to Convert Case to Chapter 7 for Cause" (Docket # 1048).  Confirming

action taken during the May 8, 2019 hearing, the Court entered an order on May 8, 2019,

requiring the Debtor and the Chapter 11 Trustee to file certain additional items.[1]  Those items

were timely filed on May 22, 2019,[2] and the Court has reviewed them.  The Motions are now ripe

for decision.

In the pending motions, the Debtor seeks a dismissal of this bankruptcy case, on

_____

[1]  Docket # 1133.

[2]  Docket ## 1134, 1135.

condition that Robert Kattula, or an entity on his behalf, first immediately pay: (1) the sum of $20,750.00 in fees to the Chapter 11 Trustee; and (2) the sum of $27,000.00 in fees to the law firm representing the Chapter 11 Trustee.[3]  The Chapter 11 Trustee supports the Debtor's motion, and has so stipulated.[4]  Prime objects to such dismissal, and instead seeks the conversion of this case to Chapter 7.  The Debtor objects to Prime's motions to convert this case.

## II.  Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and these contested matters under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). These are core proceedings under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).

These proceedings also are "core" because they each fall within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b).  Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings.  *See Allard v. Coenen* (*In re Trans–Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009).  These are proceedings "arising under title 11" because they are "created or determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code § 1112.  And these are proceedings "arising in" a case under title 11, because they are each a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III.  Discussion

11 U.S.C. § 1112(b)(1) states:

---

[3]  *See* Stipulation, etc., filed May 22, 2019 (Docket # 1135).

[4]  *See id.*

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, **the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (emphasis added).

During the May 8, 2019 hearing, counsel for the parties — *i.e.*, the Debtor; the Chapter 11 Trustee; and Prime — all agreed that this bankruptcy case should either be converted or dismissed, one or the other, rather than remain in Chapter 11. In effect, the parties agree that "cause" exists under 11 U.S.C. § 1112(b)(1) to either dismiss or convert this case.

This Court agrees with that conclusion. If the Debtor remains in bankruptcy, it can only be for a liquidation. There is no possibility, and no thought by anyone, that the Debtor can reorganize in Chapter 11. Given this, if the Debtor is to remain in bankruptcy, there is no reason for the liquidation to occur in Chapter 11. In this case, it will be more cost-efficient for a bankruptcy liquidation to take place in Chapter 7. For one thing, under Chapter 7, there will be no need for any party to incur the time and expense of proposing and filing a liquidating Chapter 11 plan (and filing an accompanying disclosure statement), and then going through the process of obtaining confirmation of such a plan.

So the Court agrees with the parties that this case must be converted to Chapter 7, or must be dismissed — one or the other. Those are the only realistic options under the circumstances of this case. Therefore, the Court finds that there is "cause" to dismiss or convert this case, under 11 U.S.C. § 1112(b)(1).

Having found that cause exists to dismiss or convert this case under § 1112(b)(1), the Court next must determine which of these choices is "in the best interests of creditors and the estate." On this question the parties disagree. But the Court finds that conversion to Chapter 7, rather than dismissal, is in the best interests of creditors and the estate, based on the following considerations.

In addition to the Chapter 11 Trustee and her appointed counsel, who have administrative expense claims, which have not yet been allowed but which will not be insignificant, there are several other creditors in this case, including non-insider creditors that have substantial allowed claims. These non-insider creditors include Prime (with an allowed, unsecured claim of 1,356,044.45);[5] the Internal Revenue Service (with allowed claims totaling $590,232.54);[6] and Rehmann Robson (with an allowed claim of $35,188.08).[7]

If this case is dismissed on the terms requested by the Debtor, these creditors will receive nothing on their claims. Only the fees of the Chapter 11 Trustee and her counsel will be paid.

If this case is converted to Chapter 7, on the other hand, these creditors may end up receiving a meaningful distribution. This is because there are assets that may be property of the bankruptcy estate in this case, which a Chapter 7 trustee may be able to monetize for substantial value, for the benefit of the creditors and the estate.

---

[5] *See* Order, etc. filed April 19, 2019 (Docket # 1126).

[6] This total claim amount is the sum of the amounts in the Internal Revenue Service's two filed claims in this case — Amended Claim # 2, filed September 30, 2013 (Claim 2-3 in the Claims Registry) (total amount of $572,847.88) plus Claim # 9, filed July 27, 2011 (Claim 9-1 in the Claims Registry) (claim amount of $17,384.66). As to Claim 2-3, the Debtor filed a notice on October 22, 2013, asking the Court to allow that amended claim, "in its entirety." (*See* "Withdrawal of Debtor's Objections to Claim Number 2, as Amended" (Docket # 718)).

[7] *See* Claim # 3-1 in the Claims Registry.

4

These possible assets that may have substantial liquidation value include, but are not necessarily limited to: (1) the rights that were originally owned by Robert Kattula under the Memorandum of Understanding;[8] and (2) a claim for $1.5 million that was originally owed by Robert and Maria Kattula to the Debtor, and which is secured by a mortgage on the Kattulas' home — a mortgage that may now have a first-priority position.

Admittedly, the Court has used the word "may" multiple times in the preceding paragraph. It is not certain that these assets will result in the realization of substantial value for the creditors, if this case is converted to Chapter 7. But at this point there is enough of a possibility of realizing substantial value, in the Court's view, to make it in the best interest of the creditors and the estate to convert this case to Chapter 7, rather than dismiss it.

This conclusion is supported, not only by the facts discussed below, but also by the fact that Robert Kattula is now willing to immediately pay a total of $47,750.00 in cash to cover the fees of the Chapter 11 Trustee and her counsel, in order to get this case dismissed.

With respect to the rights under the MOU that originally were owned by Robert Kattula, there was evidence presented, during the evidentiary hearing on the Debtor's objection to Prime's claim, that Robert Kattula's rights under the MOU were assigned by him to the Debtor, by the assignment document dated June 1, 2006.[9] The Debtor, and Robert Kattula in his testimony, took the position that this assignment document transferred ownership of Kattula's rights under

---

[8] The Memorandum of Understanding ("the "MOU") is the document referred to and quoted in the Court's Opinion filed recently in this case, entitled "Opinion Regarding Debtor's Objection to the Claim of Prime Financial, Inc." (Docket # 1125) at 85-90.

[9] A copy of the June 1, 2006 assignment document is attached to the Court's May 22, 2019 Order (Docket # 1133). This document was admitted into evidence during the evidentiary hearing, as PX-182.

5

the MOU to the Debtor.[10]  In addition, in a motion filed on September 19, 2017, the Debtor stated

that "Mr. Kattula's rights pursuant to the [MOU] were assigned to the Debtor."[11]

But as of May 22, 2019, the Debtor now takes the position that these rights under the

MOU are not property of the bankruptcy estate, but rather belong to Robert Kattula.[12]  During the

May 8, 2019 hearing, Prime's counsel argued that the MOU rights are property of the bankruptcy

estate, not Robert Kattula.  This is a disputed issue that this Court has not yet decided, and which

may need to be decided.[13]  And this Court is the best forum for deciding the issue, rather than

some other, non-bankruptcy court.  This is so because of this Court's familiarity with the issue

and this case, gained in part from the very long evidentiary hearing the Court held on the

Debtor's objection to Prime's claim.

If the MOU rights are in fact property of the bankruptcy estate, rather than property of

Robert Kattula, it is possible that such rights have substantial value that can be monetized for the

---

[10]  *See, e.g.*, the Transcript of Robert Kattula's testimony at Docket # 643, at 57-58, 59-62, 118-121.

[11]  "Second Motion of Debtor for Order For Examination of Prime Financial, Inc. and Related Entities Pursuant to Fed. R. Bankr. P. 2004" (Docket # 1032) at 3, ¶ 15.

[12]  Docket # 1134.

[13]  This Court cited the June 1, 2006 assignment document, and cited certain of the testimony of Robert Kattula about it, in the Court's April 19, 2019 Opinion regarding the objection to Prime's claim. (*See* Opinion, etc. (Docket # 1125) at 103 n. 247).  But in that Opinion, the Court did not make any finding or conclusion about whether the June 1, 2006 assignment document assigned Robert Kattula's rights under the MOU to the Debtor.  It is true that in its April 19, 2019 Opinion, this Court discussed language contained in the October 1, 2004 alleged assignment document, which language is similar to language contained in the June 1, 2006 assignment document, in a way that arguably tends to favor the Debtor's current position, that the Debtor did not obtain ownership of Kattula's MOU rights by virtue of the June 1, 2006 assignment document.  (*See* Opinion, etc. (Docket # 1125) at 46-47).  But neither the Chapter 11 Trustee nor any Chapter 7 trustee have yet had the opportunity to brief and argue about that point, since the dispute over Prime's claim was between the Debtor and Prime.  And, of course, the Debtor's *new* position (first taken on May 22, 2019) is inconsistent with the position taken by the Debtor and Robert Kattula during the evidentiary hearing.

benefit of the creditors in this case. But that is unknown at this point. What is known, however,

is that Robert Kattula and the Debtor believe that such rights have sufficient value that they are

worth investing time and money in investigating, and litigating over. Debtor's counsel stated

during the May 8, 2019 hearing that the rights under the MOU have value and will be pursued by

the Debtor and/or Robert Kattula if this bankruptcy case is dismissed. And previously, the

Debtor filed a motion seeking authority to conduct extensive discovery of Prime and several

other entities under Fed. R. Civ. P. 2004, to investigate the value of such claims. In that motion,

the Debtor stated that Robert Kattula would pay for such discovery work.[14] Another indicator of

possible value of the MOU rights, and other assets of the estate, is that at an earlier time in this

case, at least, Prime offered to pay $300,000.00 to the Chapter 11 Trustee to purchase the assets

of the bankruptcy estate, in a sale under 11 U.S.C. § 363, subject to higher and better offers.[15]

With respect to the bankruptcy estate's possible $1.5 million claim against Robert and

Maria Kattula, which is secured by a mortgage on the Kattula's home, the Court first

incorporates by reference what the Court said about this in the Court's opinion filed on

November 21, 2018, entitled "Opinion and Order Denying the September 20, 2018 Motion filed

by John D. Hertzberg, et al. (Docket # 1096)," (Docket # 1111) at 2-4. The Debtor has disputed

that this asset is an asset of the bankruptcy estate, contending instead that the $1.5 million claim

and the mortgage were assigned, pre-petition, by the Debtor to Green Lake Equities, LLC. But

---

[14] *See* "Second Motion of Debtor for Order For Examination of Prime Financial, Inc. and Related Entities Pursuant to Fed. R. Bankr. P. 2004" (Docket # 1032) at 5, ¶ 20. The Debtor withdrew this motion, without prejudice, during the May 8, 2019 hearing. *See* Order (Docket # 1130).

[15] *See* "Brief in Support of [Prime's] Second Motion to Convert Case to Chapter 7" (Docket # 179-2) at 2; "Supplemental Brief in Support of [Prime's] Second Motion to Convert Case to Chapter 7" (Docket # 244) at 17.

the Chapter 11 Trustee has taken a contrary position, contending that no such assignment occurred.[16]  And the Chapter 11 Trustee's counsel estimated, during the May 22, 2019 hearing, that the equity in the Kattula's home is such that the mortgage may have a value of roughly $348,000.00.

The Court concludes that while the liquidation of the Debtor, in Chapter 7, may require further investigation and litigation (or settlement(s)), it also may lead to the Chapter 7 trustee's recovery of funds that will provide a meaningful distribution to creditors.  For this reason, conversion is better for the creditors than a dismissal.

An additional reason for this conclusion is that a dismissal of this case would require the Debtor's creditors to separately pursue collection of their claims outside bankruptcy court, in separate actions and potentially in competition with one another.  That result, which likely would be more chaotic and expensive for the creditors, can be avoided if the Debtor's assets are liquidated in a single Chapter 7 case, in this Court.

## IV.  Conclusion

For these reasons, the Court finds and concludes that it is in the best interest of the creditors and the estate in this case to convert this case to Chapter 7, rather than to dismiss it on the terms proposed by the Debtor and the Chapter 11 Trustee.  The Court will enter an order denying the Debtor's motion to dismiss, and granting Prime's motions to convert this case to Chapter 7.

---

[16] *See, e.g.*, "Brief in Support of Trustee's Objection to Corrected Motion of John D. Hertzberg, [etc.]" (Docket # 1103) at 5-7.

09-72532-tjt   Doc 1138   Filed 05/24/19   Entered 05/24/19 16:43:38   Page 8 of 9

**Signed on May 24, 2019**



/s/ Thomas J. Tucker
_____

**Thomas J. Tucker**
**United States Bankruptcy Judge**

9