UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                Case No. 09-72532

TAJ GRAPHICS ENTERPRISES, LLC,        Chapter 7

                Debtor.                          Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL
OF COMPROMISE, AND REGARDING THE MOTION BY PRIME FINANCIAL, INC.
FOR "CLARIFICATION" ETC.**

## I. Introduction

This case came before the Court for a telephonic hearing on November 16, 2022, on the following two motions: (1) the motion filed by creditor Prime Financial, Inc. ("Prime Financial") entitled "Motion for Clarification of this Court's May 24, 2019 Opinion and Order Converting Case to a Chapter 7 or, in the Alternative, to Schedule an Evidentiary Hearing to Determine Identity of Property of this Estate" (Docket # 1205, the "Prime Financial Motion"); and (2) the motion filed by the Chapter 7 Trustee, entitled "Trustee's Motion for Order Approving Compromise" (Docket # 1209, the "Trustee Motion") (collectively, the "Motions"). Prime Financial filed an objection to the Trustee Motion (Docket # 1210). The Internal Revenue Service (the "IRS") filed a response in support of the Trustee Motion (Docket # 1231), to which Prime Financial filed a reply with exhibits (Docket ## 1233, 1234).

Counsel for the Chapter 7 Trustee, counsel for Prime Financial, counsel for the IRS, counsel for Robert Kattula, and Robert Kattula all appeared at the hearing. At the conclusion of the hearing, the Court took the Motions under advisement. Several days later, on November 21, 2022, Prime Financial filed a supplement regarding the Motions (Docket # 1236, the "Prime

Financial Post-Hearing Supplement").

**II. Discussion**

The Court has considered all relevant parts of the record of this bankruptcy case, all of the exhibits filed by the parties, all of the oral and written arguments of the parties regarding the Motions, and the Prime Financial Post-Hearing Supplement. For the reasons stated below, the Court will grant the Trustee Motion and deny the Prime Financial Motion.

**A. The Trustee Motion**

The Court will discuss the Trustee Motion first. The Trustee Motion seeks authority and approval for the Trustee to compromise several claims that either are property of the bankruptcy estate, or about which there is a dispute regarding whether the claims are property of the bankruptcy estate, rather than property of Robert Kattula or one of his related persons or entities.

**1. Jurisdiction and standards for approving a compromise**

Initially, the Court incorporates by reference, and will apply to the Trustee Motion in this case, what it has held in a previous opinion, regarding (1) the bankruptcy court's subject matter jurisdiction over a motion to approve a compromise; and (2) the principles and standards applicable to motions to approve compromise. *See In re McInerney*, 499 B.R. 574, 580-83 (Bankr. E.D. Mich. 2013) (Parts II and III.A of the Court's opinion).

**2. The Trustee's proposed compromise**

The Trustee Motion seeks authority and approval to enter into a settlement with Robert Kattula ("Kattula") and certain parties related to Kattula, containing the following terms:

1. Kattula and/or a Kattula-related party will pay $50,000.00 to the bankruptcy estate within 7 days after the entry of an order granting the Trustee Motion.

2. In exchange for that payment, the Trustee will assign to Kattula the bankruptcy estate's interest in the assets described by the Trustee as follows (sometimes referred to in this Opinion collectively as the "Assets"):

> 1) rights assigned to the Debtor by K&B Capital, LLC ("K&B") under an Assignment dated in 2004 (Exhibit A of the Motion); 2) rights assigned to the Debtor by Robert Kattula ("Kattula") under an Assignment dated in 2006 (Exhibit B of the Motion); 3) claims made in a lawsuit pending in the Commonwealth of Kentucky, Marshall Circuit Court, case no. 22-CI-00020, K&B and Kattula v. Aaron Jade, et al. (Exhibit C of the Motion; 4) an Unconditional Guarantee of Payment and related documents allegedly executed in favor o[f] K&B by B. Daniel Sills, Melanie Joy Hubbs, and Glenn D. O'Connell ("Unconditional Guarantee"); and 5) a claim for $1.5 million that was originally owed by Robert and Maria Kattula to the Debtor and which is secured by a mortgage on the Kattulas' home ("$1.5 million Claim").[1]

3. The claims filed by the following entities will be waived, and will not receive any distribution from the bankruptcy estate: Green Lake Equities, LLC (Claim No. 4 in the amount of $953,618.96); DJS Investments, Inc. (Claim No. 5 in the amount of $1,095,146.14); and Robert Kattula ILIT dated 1995 (Claim No. 6 in the amount of $5,000,000.00).

In addition, and as stated by the IRS in its written response in support of the Trustee Motion, and by the IRS's counsel during the hearing, the IRS will waive certain rights it has as a secured creditor, if the Trustee Motion is granted. This is discussed in more detail below.

### 3. The considerations that persuade the Court to approve the proposed compromise

The Court finds and concludes that under the circumstances of this case, the compromise proposed in the Trustee Motion is fair and equitable; is reasonable; is in the best interests of the bankruptcy estate and its creditors; and should be approved. These findings and conclusions are

---

[1] Trustee Motion, proposed order (Docket # 1209 at pdf pp. 14-15).

3

supported by the following considerations.

**First**, the bankruptcy estate has no money or means to hire counsel to conduct litigation that likely will be necessary without the proposed compromise, namely (1) litigation with Kattula and Kattula-related entities to establish the bankruptcy estate's ownership of the claims that are part of the Assets, which ownership is in dispute as to at least some of the major Assets, including the rights under the Memorandum of Understanding (the "MOU")[2] that originally belonged to Robert Kattula; and (2) litigation to liquidate the claims — *i.e.*, reduce them to money — if and to the extent the claims are determined to be property of the bankruptcy estate.

With no money in the bankruptcy estate, the Chapter 7 Trustee does not have the ability to hire counsel on an hourly rate basis to litigate the above issues. Given the nature of the claims and disputes involved, the Trustee is very unlikely ever to be able to hire competent counsel on a contingent fee basis to litigate the above issues. During the hearing, the Trustee's counsel (who is one of two attorneys in the Trustee's law firm) stated that the Trustee's firm is unwilling to litigate any of these issues on a contingent fee basis. And the Trustee's counsel stated that the Trustee has made efforts to find counsel to litigate on a contingent fee basis, and has been unsuccessful. While the Trustee's counsel did not provide details of such efforts, it is not surprising to the Court that the Trustee cannot find counsel to litigate the claims at issue on a contingent fee basis, especially given the other considerations discussed below.

**Second**, the possibility of Prime Financial litigating claims on behalf of the bankruptcy

---

[2] Key provisions of the MOU are quoted in the Trustee Motion (Docket # 1209 at pdf pp. 5-6). The Court has discussed the MOU in at least two of its previous written opinions in this case, and the Court incorporates that discussion by reference. *See In re TAJ Graphics Enterprises, LLC*, 600 B.R. 1, 4-6 (Bankr. E.D. Mich. 2019); *In re TAJ Graphics Enterprises, LLC*, 601 B.R. 451, 502-05 (Bankr. E.D. Mich. 2019).

estate, including claims relating to the MOU, on a "derivative standing" basis, is not workable. During the hearing, the Court asked about this possibility, presumably by Prime Financial using its present counsel, on some sort of a contingent fee basis. *See generally In re Dzierzawski*, 518 B.R. 415, 417-19 (Bankr. E.D. Mich. 2014) (discussing derivative standing in a Chapter 7 case). Before the hearing on the Trustee Motion, Prime Financial never sought to be granted any such derivative standing, and never discussed that possibility with the Trustee. After the hearing, in its Post-Hearing Supplement, Prime Financial did express "its willingness to act on behalf of the bankruptcy estate for the purpose of establishing the bankruptcy estate's title and interest in potential estate assets."[3]

The Trustee's counsel stated during the hearing that the Trustee would oppose such a derivative standing arrangement with Prime Financial. But quite apart from that problem, Prime Financial has not expressed a willingness to litigate on behalf of the bankruptcy estate to liquidate any of the estate's claims, if and after they are determined to belong to the bankruptcy estate.

Nor could the Court approve such an arrangement, at least with respect to the rights under the MOU, which Prime Financial considers to be the estate's most significant asset. That is because there is a clear and substantial conflict of interest in Prime Financial litigating to enforce and collect on the bankruptcy estate's rights under the MOU. Such litigation, for the estate, would be against the other party to the MOU, Calvert Properties, LLC. The sole owner of Calvert Properties is Aaron Jade. But Aaron Jade also is the sole shareholder of Prime Financial. So in effect, Aaron Jade would be litigating *against himself*. This Court could not and would not

---

[3] Docket # 1236.

permit such an arrangement.

**Third**, even if the Trustee could obtain counsel to litigate for the estate, the Trustee's ability to establish the bankruptcy estate's ownership of the rights in the claims at issue is uncertain, especially the rights in the MOU that originally belonged to Kattula. It is true that Kattula long took the position, and testified, that his rights under the MOU were assigned to the Debtor, and that Kattula later reversed himself on that position, after this Court substantially overruled the Debtor's objection to Prime Financial's claim. But that switch in position by Kattula occurred after this Court held that the purported Assignment dated October 1, 2004 did not assign *anything* to the Debtor. And at least one of the reasons for the Court's conclusion on that point may apply also to the Assignment dated June 1, 2006 (Ex. B to the Trustee Motion), which purports to assign Kattula's rights under the MOU to the Debtor. *See, e.g., In re TAJ Graphics Enterprises, LLC*, 601 B.R. at 481-82. These circumstances give Kattula a chance to succeed in his current assertion that he did not assign away ownership of his rights under the MOU.

The result is that if the issue has to be litigated, Kattula has a chance of prevailing in his most recent position, that he still owns the rights under the MOU, and that the bankruptcy estate does not own them. This is so despite the serious problems this Court found with Kattula's credibility, as expressed repeatedly in the Court's claim objection opinion (601 B.R. 451). And while the bankruptcy estate might well prevail over Kattula's claim to own the MOU rights, Prime Financial is incorrect in arguing that judicial estoppel would preclude Kattula's claim. At least one of the requirements for judicial estoppel is not met in this situation, because this Court never adopted Kattula's earlier position that he assigned his MOU rights to the Debtor or the

6

09-72532-tjt    Doc 1240    Filed 11/29/22    Entered 11/29/22 16:54:36    Page 6 of 10

bankruptcy estate. *See Gold v. Winget* (*In re NM Holdings Co., LLC*), 407 B.R. 232, 283-84 (Bankr. E.D. Mich. 2009) (citations omitted) (discussing requirements for judicial estoppel).

**Fourth,** the IRS has made a concession that strongly tilts the case in favor of the Court approving the Trustee's proposed compromise.

It is undisputed that the IRS has an allowed secured claim in this bankruptcy case in the amount of $436,154.68, depending on the value of the IRS's collateral.[4] According to the IRS, that claim is secured by all of the assets of the bankruptcy estate, including the proceeds of the Assets that the Trustee now seeks to assign to Kattula as part of the proposed compromise. Neither the Trustee nor Prime Financial disputes this.

The IRS recently reached a settlement with Kattula, outside of this bankruptcy case. In supporting the Trustee's proposed compromise, the IRS has stated that if the Trustee Motion is granted, the IRS will waive any rights it has *as a secured creditor* to payment of any of the $50,000.00 in settlement proceeds the Trustee will receive. Such waiver by the IRS applies only if the Trustee's proposed compromise is approved.

This means that in the absence of the Trustee's proposed compromise, and even if the bankruptcy estate could obtain counsel to litigate for it, and even if such counsel were successful in litigating the estate's ownership of the Assets, including the rights under the MOU, the estate would have to realize a net amount of *substantially more than* $436,154.68 in proceeds from the

---

[4] *See* Claim No. 2-3 in the Court's Claims Registry, filed September 30, 2013. That secured claim is deemed an allowed claim under 11 U.S.C. § 502(a), because no one other than the Debtor ever has objected to it, and the Debtor's objection to the IRS's earlier-filed claim was withdrawn on October 22, 2013. *See In re TAJ Graphics Enterprises, LLC*, 600 B.R. at 3-4, and 3 n.6. Of course, the IRS's secured claim is only actually allowed as a *secured* claim up to the value of the estate's assets. *See* 11 U.S.C. § 506(a)(1).

Assets before any nonpriority unsecured creditor, such as Prime Financial, could receive any distribution at all. *See generally* 11 U.S.C. § 724(b).

Prime Financial, which is the only creditor objecting to the Trustee's proposed compromise, has an allowed, *nonpriority*, *unsecured* claim in the amount of $1,356,044.45. *See In re TAJ Graphics Enterprises, LLC*, 601 B.R. at 514. In the absence of the Trustee's proposed compromise, the $436,154.68 secured claim of the IRS, as well as the IRS's allowed priority claims in the total amount of $38,596.47,[5] as well as all allowed administrative claims, would have to be paid in full before Prime Financial could be paid any distribution in this case.

Such an outcome appears to be very unlikely. And that means that *in its capacity as a creditor in this bankruptcy case*,[6] Prime Financial is very unlikely to be prejudiced at all by the Court's approval of the Trustee's proposed settlement.

**Fifth**, the net value of the Assets that could actually be realized by the bankruptcy estate, after litigation, is quite speculative, even assuming that all of the Assets including the MOU rights are property of the estate. Prime Financial's attorney argued during the hearing that the value of the estate's MOU rights could turn out to be significant, perhaps even more than the amount of the IRS's secured claim. But this is nothing more than speculation. Prime Financial has not presented or proffered any evidence, or any specific reason(s), to support its counsel's vague speculation about the possible value of the MOU rights. And Prime Financial has not argued, and has provided no information whatsoever to suggest, that there is any meaningful net

---

[5] *See* IRS Claim Nos. 2-3 and 9-1 in the Claims Registry.

[6] It is immaterial whether this Court's approval of the Trustee's proposed settlement has any adverse effect on Prime Financial (or any of its affiliates or its owner), in any capacity *other than* as a creditor in this bankruptcy case, such as in a capacity as a target in non-bankruptcy court litigation.

8

value to be gotten from any of the other Assets the Trustee wants to assign to Kattula as part of the proposed compromise.

**Sixth**, in the absence of the Trustee's proposed settlement, the litigation necessary to liquidate the estate's claims at issue is likely to be complex, very expensive and very time consuming for the estate, *if* somehow the estate could even obtain counsel to prosecute such litigation.

Taken together, these considerations strongly support the Court's conclusion that the Trustee's proposed compromise should be approved. The Court will grant the Trustee Motion.

### B. The Prime Financial Motion

The Prime Financial Motion, which was filed 15 days before the Trustee Motion was filed, asks the Court to determine, by holding an evidentiary hearing, "the ownership of the MOU," and to "[d]irect the Chapter 7 Trustee and the Office of the United States Trustee to take appropriate action" to remedy what Prime Financial considers to be inappropriate delay and inaction by the Trustee in administering the assets of the bankruptcy estate.[7]

By filing and successfully prosecuting the Trustee Motion, the Chapter 7 Trustee now has moved the administration of the bankruptcy estate assets, and this bankruptcy case, forward considerably. That is not an outcome that Prime Financial wants, but it is the best step forward under the circumstances, in the Court's view. Because the Court is granting the Trustee Motion, the Court concludes that there is nothing further that the Court needs to do or should do at this time to move the case along. The Court concludes that the Prime Financial Motion is rendered moot by the Court's granting of the Trustee Motion.

---

[7] *See* Prime Financial Motion (Docket # 1205) at 4.

For these reasons, the Court will deny the Prime Financial Motion.

### III. Conclusion

For the reasons stated in this Opinion, the Court will enter an order granting the Trustee Motion and denying the Prime Financial Motion.

**Signed on November 29, 2022**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**